

| | |
|---|---|
| BRIAN SALONEN,<br><br>Plaintiff,<br><br>vs.<br><br>JACKSON NATIONAL LIFE<br>INSURANCE COMPANY,<br><br>Defendant. | CV 18–119–M–DWM<br><br>OPINION AND<br>ORDER |

Brian Salonen is suing Jackson National Life Insurance Company ("Jackson") for defamation after Jackson mistakenly informed his clients that he was no longer an authorized agent. Jackson moves for summary judgment that its statements were not defamatory as a matter of law. (Doc. 15.) For the following reasons, the motion is granted.

## BACKGROUND

The following facts are taken primarily from the parties' Statement of Stipulated Facts. (Doc. 11.) They are undisputed unless otherwise indicated. Disputed facts are construed in favor of the nonmovant. *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam).

Brian Salonen is a financial representative and insurance broker in Missoula, Montana. (Doc. 11 at ¶¶ 1, 3, 4.) He has been licensed to sell Jackson insurance and financial products for over 20 years. (*Id.* at ¶ 5.) In accordance with federal law, Jackson requires its agents to complete an anti-money laundering training program every two years. (*Id.* at ¶¶ 6–7.) Salonen completed the training on March 1, 2017. (*Id.* at ¶ 8.) He was therefore compliant with the training requirements until March 1, 2019. (Doc. 6 at ¶ 21; Doc. 3 at ¶ 8.) Nevertheless, in a letter dated January 11, 2018, Jackson informed Salonen that he failed to verify completion of the anti-money laundering training, and therefore "Jackson has ended its contractual relationship with you, and that your appointment(s) with Jackson for the above referenced producer number(s) has been terminated under the terms of the Jackson Producer Agreement." (Doc. 11 at ¶ 9.) Jackson subsequently recognized that the letter was in error. (*Id.* at ¶ 10.)

Unbeknownst to Salonen, however, on January 12, 2018, Jackson sent a letter to Salonen's clients who had Jackson products. (Doc. 6 at ¶ 26; Doc. 3 at ¶ 13.) The letter stated:

> The purpose of this letter is to inform you that BRIAN S SALONEN is no longer appointed with Jackson National Life Insurance Company (Jackson) as an insurance agent/broker. BRIAN S SALONEN is no longer authorized to sell or service Jackson products or to transact any business on your behalf with Jackson.
>
> Please feel free to call the Jackson Service Center at (800) 645-4565 if you have any questions or need information about your policy.

2

(Doc. 11 at ¶ 12.)

On January 23, 2018, Jackson sent a follow-up letter, which stated:

> Jackson had made an error when we notified you that Brian Salonen is no longer appointed with Jackson and, therefore, unable to transact business on your behalf. Please be assured that Brian Salonen remains actively appointed with Jackson, is in good standing, and can service your contract with us.

(*Id.* at ¶ 13.) Jackson also called Salonen's clients to explain the error. (*See generally* Doc. 20-1.)

Despite the follow-up letter, Salonen claims that his non-Jackson clients asked him about his purported termination from Jackson. (Doc. 6 at ¶ 35.) He alleges that an unknown number of people in western Montana were falsely informed that his relationship with an insurer was terminated. (*Id.* at ¶ 37.) Salonen sued Jackson in state court for defamation and defamation per se, negligence, and punitive damages. (*Id.* at ¶¶ 46–59.) On June 28, 2018, Jackson removed to this Court. (Doc. 1.) Since then, Salonen has voluntarily dismissed his negligence claim with Jackson's consent and leave of the Court. (Docs. 14, 18.) Jackson now seeks summary judgment on the remaining claims. (Doc. 15.)

## LEGAL STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view all evidence and draw

3

all inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## ANALYSIS

Salonen claims the January 12 letter erroneously notifying his clients that he was no longer an authorized Jackson agent constitutes defamation and defamation per se. (Doc. 6 at ¶¶ 46–52.) Under Montana law, defamation is effected by either libel or slander, Mont. Code Ann. § 27-1-801, with slander being spoken and libel being written, *Tindall v. Konitz Contracting, Inc.*, 783 P.2d 1376, 1382 (Mont. 1989). Salonen's claims relate only to the written letter and thus allege libel. Libel is specifically defined as "a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation that exposes any person to hatred, contempt, ridicule, or obloquy or causes a person to be shunned or avoided or that has a tendency to injure a person in the person's occupation." Mont. Code Ann. § 27-1-802. Under Article II, Section 7 of the Montana Constitution, a jury must determine whether allegedly defamatory statements are true or false. *Hale v. City of Billings*, 986 P.2d 413, 417–18 (Mont. 1999). However, the threshold issue of whether a statement is even capable of bearing a defamatory meaning, regardless of its truth or falsity, can be decided by a court as a matter of law at summary

judgment. *McConkey v. Flathead Elec. Co-op.*, 125 P.3d 1121, 1129–30 (Mont. 2005). That is the sole issue here.[1]

Defamation per se refers to statements "which upon their face and without the aid of extrinsic proof are injurious to the person concerning whom they are spoken." *Manley v. Harer*, 235 P. 757, 758 (Mont. 1925). To be actionable as defamation per se, statements "must be of such nature that the court can presume as a matter of law that they will tend to disgrace and degrade [the plaintiff] or cause him to be shunned and avoided. It is not sufficient, standing alone, that the language is unpleasant and annoys or irks him, and subjects him to jests or banter, so as to affect his feelings." *McConkey*, 125 P.3d at 1130 (quoting *Wainman v. Bowler*, 576 P.2d 268, 271 (Mont. 1978)) (alteration in original). Claims of defamation per se "may not be based on innuendo or inference." *Id.* Damages are presumed in defamation per se cases. *Manley*, 235 P. at 759. However, where statements are not defamatory per se, the plaintiff must prove special damages. *Id.*; *Blue Ridge Homes, Inc. v. Thein*, 191 P.3d 374, 382 (Mont. 2008).

Salonen concedes he cannot prove special damages. It is undisputed that he cannot identify any lost revenue, any lost business referrals, or any other proof that

---

[1] In its summary judgment briefing, Jackson maintains the letter was accurate when it was mailed. This is a curious position given Jackson concedes it "had made an error." (*See, e.g.*, Doc. 11 at ¶ 13.) In any event, the truth or falsity is irrelevant to whether the statement is capable of bearing a defamatory meaning. *McConkey*, 125 P.3d at 1129–30.

5

he has been harmed because of Jackson's actions. (Doc. 20 at ¶¶ 13–18.) Accordingly, his defamation claim fails, and he can only recover if Jackson's letter constitutes defamation per se. It does not. The letter merely stated that Salonen "is no longer appointed with Jackson" and "is no longer authorized to sell or service Jackson products or to transact any business on your behalf with Jackson," without offering any explanation. (Doc. 11 at ¶ 12.) Salonen argues the only reasonable meaning is that he was fired, which could only be for incompetence or malfeasance. To support his argument, he relies on Jackson's characterizing the letter as stating he was "terminated" in follow-up calls with his clients. (*See, e.g.*, Doc. 20-1 at 20, 22.) But defamation per se concerns a statement's plain meaning without reference to extrinsic evidence, like the follow-up calls, or inferences, like that Salonen was fired. By definition, "the language must be susceptible of but one meaning to constitute libel per se." *Wainman*, 576 P.2d at 270. Because the letter offers no explanation, it leaves open several possibilities, including that the parties' contract expired, that Salonen requested the change in his status, or that Salonen was terminated.

Salonen further argues the letter expressly directed his clients to shun or avoid him by stating that he "is no longer authorized to sell or service Jackson products or to transact any business on your behalf with Jackson." (Doc. 11 at ¶ 12.) But the plain language of the letter does no such thing. Indeed, as Salonen

concedes, he still has accounts with all 24 Jackson clients who received the letter. (Doc. 20 at ¶ 13.) Accordingly, Salonen's claim for defamation per se fails as a matter of law. In the absence of a valid claim for substantive liability, Salonen's claim for punitive damages also fails.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that Jackson's motion for summary judgment (Doc. 15) is GRANTED. The Clerk of Court is directed to enter judgment in favor of Defendant Jackson National Life Insurance Co.

DATED this \_\_\_\_ day of June, 2019.

Donald W. Molloy, District Judge
United States District Court

7